OPINION
{¶ 1} Derek DeShart Bush ("Bush") pled no contest to possession of crack cocaine in the Montgomery County Court of Common Pleas following the denial of his motion to suppress. He was sentenced accordingly. He appeals, raising one assignment of error.
 {¶ 2} The state's evidence established the following facts.
 {¶ 3} On April 11, 2002 at approximately 10:20 p.m., Sheriff Deputy Brad Daugherty was in uniform in a marked cruiser patrolling in Harrison Township, Montgomery County, Ohio. He observed a suspicious individual walking in a high crime and drug area and attempted to stop him. When the individual saw Deputy Daugherty, he began to run. Deputy Daugherty and another deputy, Deputy McCoy, who was on bike patrol, apprehended the individual and discovered a telephone number for someone named Dray in the individual's possession. Deputy Daugherty asked the individual who Dray was, and the individual indicated that he bought crack cocaine from Dray.
 {¶ 4} Posing as a person who wanted to buy crack cocaine, Deputy Daugherty telephoned Dray. Dray was out of town, but he gave Deputy Daugherty the phone number of someone named Block who could sell him crack cocaine. Deputy Daugherty then called Block, posing as someone named Mike who wanted to buy crack cocaine. Block asked Deputy Daugherty where he wanted to meet, and the two ultimately arranged to meet at the Sunoco gas station on the corner of North Dixie Drive and Needmore Road. Deputy Daugherty asked Block what he would be wearing, and Block replied that he would be wearing a light blue shirt and dark colored pants.
 {¶ 5} Deputy Daugherty waited across the street from the Sunoco station with Deputy McCoy. When Block did not arrive within five to six minutes, Deputy Daugherty called him again. He dialed the same number and spoke to someone with the same voice, who he assumed to be Block. Block informed Deputy Daugherty that sheriffs were close to the Sunoco station and that he no longer wanted to meet there. He asked Deputy Daugherty to meet him at a place called the L.A. Lounge; however, Deputy Daugherty did not know that location. They arranged to meet at the Captain D's restaurant at 1934 Needmore Road, which was across the street from the Sunoco station. Block told Deputy Daugherty that he would be there within a few minutes.
 {¶ 6} Deputy Daugherty asked two undercover detectives to watch the back of the Captain D's restaurant. They arrived in an unmarked Ford Taurus to watch for Block. After a few minutes, the undercover detectives informed Deputy Daugherty that a silver Toyota had pulled into the Captain D's parking lot. Deputy Daugherty then called Block again and asked where he was. Block replied that he was behind Captain D's near two semi trucks. There was only one occupied car parked behind the restaurant. Deputy Daugherty asked Block if he was in the vehicle, and Block said yes.
 {¶ 7} Deputy Daugherty in his cruiser, Deputy McCoy on his bicycle, and the two detectives in the Ford Taurus approached the silver Toyota. The vehicle attempted to drive away, but it was blocked by the Ford Taurus. The officers got the male passenger, later determined to be Bush, and the female driver out of the car. Bush's clothing matched the description that Block had given of his clothing. Deputy Daugherty patted Bush down for weapons and felt a hard, rock-like object in his groin area. Based upon his experience and training, he knew that subjects frequently hid drugs in that area. He also recognized the object as crack cocaine based upon its feel. He asked Bush what the object was, and Bush replied that it was "nothing." Deputy Daugherty then dislodged the object, and it slid down Bush's pant leg. Lab tests later confirmed that the object was, in fact, crack cocaine. Bush was arrested at the scene for trafficking in crack cocaine.
 {¶ 8} On May 13, 2002, Bush was indicted on one count of possession of crack cocaine in an amount equal to or greater than ten grams but less than twenty-five grams in violation of R.C. 2925.11(A). He filed a motion to suppress the drugs on June 19, 2002. A suppression hearing was held on August 29, 2002, and the trial court denied Bush's motion on August 30, 2002. On November 27, 2002, Bush entered a plea of no contest pursuant to an agreement with the state that he would receive two years of imprisonment. The trial court sentenced Bush on the same date to a mandatory two years of imprisonment pursuant to his plea agreement with the state.
 {¶ 9} Bush raises the following assignment of error.
 {¶ 10} "The Trial Court Erred In Failing To Suppress Evidence Gained Against Appellant In Violation Of His Right To Freedom From Unreasonable Search And Seizure, Pursuant To The Fourth AndFourteenth Amendments To The United States Constitution And Comparable Portions of The Ohio Constitution."
 {¶ 11} Bush argues that the police officers lacked reasonable suspicion to stop his vehicle and conduct a pat down of his person because they had observed no criminal activity by the occupants of the vehicle and because they had had an insufficient basis to conclude that he was Block. He further argues that Deputy Daugherty exceeded the permissible scope of a pat down search by manipulating the object. He argues that it was not immediately apparent to Deputy Daugherty that the object was crack cocaine because Daugherty asked Bush what the object was.
 {¶ 12} Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress: "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994), 93 Ohio App.3d 586,592, 639 N.E.2d 498.
 {¶ 13} The state argues that the police had reasonable suspicion to conduct an investigative stop and pat down search of Bush pursuant toTerry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868. To justify such a stop under Terry, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 1880; see, also,State v. Andrews (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. The propriety of an investigative stop is to be determined by considering the totality of the circumstances through the eyes of a reasonable and prudent police officer on the scene. Andrews, supra, at 87-88.
 {¶ 14} In this case, we believe that the officers had a reasonable suspicion, based upon articulable facts, that Bush was engaged in criminal activity. Deputy Daugherty spoke with an individual called Block about purchasing crack cocaine. They arranged to meet at the Captain D's restaurant, and Block indicated that he would be wearing a light blue shirt and dark colored pants. When a silver Toyota pulled into the Captain D's parking lot, Deputy Daugherty spoke to Block again and asked him where he was. Block replied that he was behind the Captain D's near two semi trucks. When Daugherty asked Block if he was in the vehicle, Block replied that he was. The silver Toyota was the only occupied vehicle in the parking lot behind the Captain D's restaurant. When the police officers approached the car, the occupants attempted to drive off. Upon stopping the car, Deputy Daugherty observed that Bush was wearing clothing consistent with the description provided by Block. Based upon these facts, Deputy Daugherty had a reasonable, articulable suspicion that Bush was the individual with whom he had been speaking about purchasing crack cocaine. He therefore had a reasonable, articulable suspicion that Bush was in possession of crack cocaine. Accordingly, the trial court did not err in concluding that the investigative stop of the vehicle and its occupants was permissible under Terry.
 {¶ 15} Upon stopping the vehicle, Deputy Daugherty patted down Bush. In order to conduct a pat down search under Terry, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, supra, at 1883. A pat down under Terry, however, is justified solely by "the protection of the police officer or others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Id. at 1884. We have repeatedly held that in cases involving drugs there is a high likelihood that weapons are involved. See, e.g., State v. Woodward, Montgomery App. No. 18073,2002-Ohio-942. Moreover, the Supreme Court of Ohio has held that "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." State v. Evans, 67 Ohio St.3d 405, 413, 1993-Ohio-186,618 N.E.2d 162.
 {¶ 16} In this case, Deputy Daugherty was stopping an individual who he believed was involved in drug trafficking. Due to the recognized nexus between drugs and weapons, it was reasonable for Deputy Daugherty to pat Bush down for weapons. Upon patting Bush down, he felt an object that he knew by its feel to be crack cocaine. An officer is permitted to retrieve contraband discovered during the course of a pat down for weapons where the identity of the item is apparent to the officer by its feel alone. See Minnesota v. Dickerson (1993), 508 U.S. 366, 375-76,113 S.Ct. 2130, 2137. Deputy Daugherty felt a hard, rock-like substance that he immediately knew to be crack cocaine based upon his experience and training. He further testified that he had frequently seen individuals hide drugs in their groin area. Although he did, as Bush argues, ask Bush the identity of the object, this question does not conclusively negate Deputy Daugherty's testimony that he immediately recognized the object to be crack cocaine. The trial court heard the entirety of the deputy's testimony and presumably concluded that Deputy Daugherty had known the object to be crack cocaine based upon its feel. This conclusion is supported by the evidence. Therefore, pursuant to Dickerson, Deputy Daugherty was permitted to seize the object, and the trial court did not err in so concluding.
 {¶ 17} Accordingly, we conclude that the trial court did not err in denying Bush's motion to suppress.
 {¶ 18} The sole assignment of error is overruled.
 {¶ 19} The judgment of the trial court will be affirmed.
FAIN, P.J. and GRADY, J., concur.